**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| TATEN PIEPERGERDES,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF GOVERNORS OF MISSOURI WESTERN STATE UNIVERSITY;<br><br>AND<br><br>ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.,<br><br>Defendants. | ) | Case No. 5:26-cv-6050-RK |

**ORDER**

Before the Court are the following three motions: (1) Plaintiff Taten Piepergerdes' motion to remand, (Doc. 6); (2) Defendant Board of Governors of Missouri Western State University's motion to dismiss for failure to state a claim, (Doc. 7); and Defendant Rocky Mountain Chocolate Factory, Inc.'s motion to dismiss for lack of personal jurisdiction and failure to state a claim as to Count 3 (negligent misrepresentation), (Doc. 9). The motions are fully briefed. (Docs. 8, 10, 11, 14, 15, 17, 21, 22, 23.)[1] Defendants also filed motions to stay discovery. (Docs. 29, 33.)

After careful consideration and review and for the reasons explained below, the Court **ORDERS** that: (1) Plaintiff Piepergerdes' motion to remand, (Doc. 6), is **DENIED**; (2) Defendant Board of Governors of Missouri Western State University's motion to dismiss for failure to state a claim, (Doc. 7), is **GRANTED**, (3) Defendant Rocky Mountain Chocolate Factory's motion to dismiss, (Doc. 9), is **GRANTED** under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, and is **DENIED as moot** under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim as to Count 3; and (4) Defendants' motions to stay discovery, (Doc. 29, 33), are **DENIED as moot**.

---

[1] Docs. 22 and 23 are corrected briefs which Plaintiff initially filed at Docs. 13 and 16.

## Background

During the Spring 2025 Semester, Plaintiff Taten Piepergerdes was a student in his senior year at Missouri Western State University, which is a public university located in St. Joseph, Missouri. (Doc. 1-2 at ¶¶ 1, 2, 9.) He enrolled in a course, "Applied Business Owners, MGT 417" ("MGT 417"), which was "designed for senior business students." (*Id.* at ¶¶ 9, 10.) As set out in the syllabus for MGT 417, the course included a structured franchise competition which "offer[ed] the opportunity to acquire ownership in a business franchise." (*Id.* at ¶¶ 10, 11.) At the time of Plaintiff Piepergerdes' enrollment in MGT 417, the business franchise offered through the structured franchise competition was a chocolate retail store located in Corpus Christi, Texas, ("the Corpus Christi Franchise"), a franchise of Defendant Rocky Mountain Chocolate Factory, Inc. (*Id.* at ¶¶ 3, 12.) Defendant Rocky Mountain Chocolate Factory has previously awarded other chocolate retail store franchises to prior MGT 417 students through the structured franchise competition. (*See id.* at ¶ 17.)

Plaintiff Piepergerdes alleges that he enrolled in MGT 417 based on "the express understanding and expectation" from the syllabus as well as other "representations" by "Defendants"[2] "that he would have a genuine opportunity to acquire ownership" of the Corpus Christi Franchise. (*Id.* at ¶ 22.) In early May 2025, Plaintiff Piepergerdes completed an internship at a Rocky Mountain Chocolate Factory franchise in Utah (which had been awarded to a past MGT 417 student) and visited the Corpus Christi Franchise. (*Id.* at ¶¶ 37, 38.) After submitting his franchise business plan and participating in two rounds of presentations, Plaintiff Piepergerdes was ultimately chosen by the panel of judges as the winning student on May 30, 2025. (*Id.* at ¶¶ 31, 35, 36, 39, 40.) The panel of judges included, among others, "[Missouri Western State University] professors," and "a [Rocky Mountain Chocolate Factory] representative."[3] (*Id.* at ¶ 36.)

---

[2] Throughout his complaint, Plaintiff often collectively vaguely and generally refers to "Defendants" rather than identifying one defendant or the other, including in the factual or background section of the complaint. This method and form of pleading is largely unhelpful and somewhat confusing, particularly where the two defendants are separate legal entities necessarily with different ways or means of involvement in the underlying dispute.

[3] The Court notes that included among the other judges on the panel is Steve Craig, who appears to be a member of Rocky Mountain Chocolate's Board of Directors, (*see* Doc. 10-1 at 17), although it is not clear whether Mr. Craig served on the panel as a representative of Rocky Mountain Chocolate Factory or in another capacity. Plaintiff does not include any allegations in the complaint identifying Mr. Craig as serving on the judging panel as a representative of Rocky Mountain Chocolate Factory or in his capacity as a member of the company's Board of Directors, as opposed to some other capacity.

After he was selected as the winning student, Plaintiff Piepergerdes "began to execute on his business plan" for the Corpus Christi Franchise. (*Id.* at ¶ 42.) He purchased equipment and supplies; registered his franchise with Texas state agencies; opened bank accounts and credit cards in the franchise name ("Co[a]stal Bend Chocolate LLC"); and "ma[de] relocation arrangements." (*Id.*) Additionally, in June 2025, Plaintiff Piepergerdes attended a five-day corporate training program in Colorado. (*Id.* at ¶ 45.)

On or about July 3, 2025, a Thursday, Plaintiff Piepergedes "rented a U-Haul and moved to Corpus Christi . . . to take ownership of the franchise and begin work." (*Id.* at ¶ 47.) On Monday, July 7, 2025, however, Plaintiff Piepergerdes was informed that the shopping mall where the Corpus Christi Franchise was located "would not allow [Plaintiff] to take ownership of the franchise" and that "the franchise would not be transferred to him." (*Id.* at ¶¶ 48, 49, 50.)[4] Plaintiff Piepergerdes alleges that Defendants had been "aware of the mall's alleged prohibition prior to Plaintiff moving to [Texas]," but did not disclose "these restrictions and obstacles" to Plaintiff. (*Id.* at ¶¶ 51, 52.) Plaintiff Piepergerdes alleges that Defendant Rocky Mountain Chocolate Factory offered him an employment agreement without ownership and that he visited "other [Rocky Mountain Chocolate Factory] franchises to explore possibilities," but that ultimately Defendants "reneged all offers." (*Id.* at ¶¶ 55, 56, 57.)

Plaintiff filed a civil action against Defendants in the Circuit Court of Buchanan County, Missouri, on March 13, 2026, seeking damages for breach of contract (express and implied-in-fact) and negligent misrepresentation. Defendant Board of Governors of Missouri Western State University ("the University") removed the case to federal court thirteen days later, on March 26, 2026, asserting federal diversity-of-citizenship subject-matter jurisdiction. (Doc. 1.) Neither Defendant had been served when the case was removed to federal court. (Doc. 1 at ¶ 12.) For purposes of diversity-of-citizenship jurisdiction, Defendant University is a citizen of Missouri and Defendant Rocky Mountain Chocolate Factory is a citizen of Colorado and Deleware. (*See* Doc. 1 at ¶¶ 3, 4.) Plaintiff Piepergerdes does not argue otherwise. Only the citizenship of Plaintiff is

[4] Plaintiff includes only that the Corpus Christi Franchise "was subject to lease restrictions [imposed by the shopping mall] that prevented transfer to Plaintiff." (Doc. 1-2 ¶ 78(C).) He does not further clarify or explain the nature of the shopping center's lease restriction and how it prevented him from receiving transfer of the Corpus Christi Franchise.

contested, whether—for purposes of federal diversity jurisdiction—Plaintiff is a citizen of Missouri (as he contends) or Texas (as Defendant University contends).

## Discussion

### I. Plaintiff Piepergerdes' Motion to Remand (Doc. 6)

Plaintiff Piepergedes argues that Defendant University's pre-service removal (so-called "snap removal") is improper because (1) its removal violated the forum-defendant rule and (2) there is lack of complete diversity of citizenship.

#### A. The Statutes: Removal and Subject-Matter Jurisdiction

A defendant normally may remove an action from state court when a case falls within the original jurisdiction of the district court. 28 U.S.C. § 1441(a). "Federal courts are courts of limited jurisdiction."[5] *Myers v. Richland County*, 429 F.3d 740, 745 (8th Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Under 28 U.S.C. § 1332(a), a district court has original jurisdiction when the parties are citizens of different states and the amount in controversy exceeds $75,000. Generally, a defendant may remove to federal court a case originally filed in state court if there is federal subject-matter jurisdiction, including diversity jurisdiction. *See In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010). The removing party bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *Id.* at 620. Any doubts concerning federal jurisdiction in a removal case should be resolved in favor of remand. *Id.* A case must be remanded to state court if the district court lacks subject-matter jurisdiction. 28 U.S.C. § 1447(c); Fed. R. Civ. P. 12(h)(3).

The so-called "forum-defendant" rule is an exception to the general rule of removability of a case from state to federal court when federal subject-matter jurisdiction exists. Under 28 U.S.C. § 1441(b)(2), a defendant's ability to remove a lawsuit from state court asserting federal diversity jurisdiction is limited if a defendant is a citizen of the forum state.[6] Section 1441(b)(2) provides: "A civil action otherwise removable solely on the basis of jurisdiction under section 1332(a) [i.e. diversity-of-citizenship subject-matter jurisdiction] . . . may not be removed if any of the parties

[5] Unlike federal courts which have limited jurisdiction only as granted under Article III of the U.S. Constitution and federal statutes (such as 28 U.S.C. §§ 1331 & 1332), state courts have general jurisdiction. *See Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019).

[6] Because diversity jurisdiction requires complete diversity, the forum-defendant rule thus generally applies when an out-of-state plaintiff brings suit against a defendant in the defendant's own forum (rather than the plaintiff's forum).

in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

The Eighth Circuit historically viewed the forum-defendant rule as jurisdictional in nature. *See Horton v. Conklin*, 431 F.3d 602, 605 (8th Cir. 2005) (reaffirming the Eighth Circuit's prior holding in *Hurt v. Dow Chemical Co.*, 963 F.2d 1142, 1146 (8th Cir. 1992), that "the violation of the forum defendant rule is a jurisdictional defect" in removal (quoting *Hurt*)) In *Holbein v. TAW Enterprises, Inc.*, 983 F.3d 1049 (8th Cir. 2020), however, the Eighth Circuit overruled this precedent. In *Holbein*, the Eighth Circuit held—aligning this circuit with the majority of other circuit courts of appeal on the specific issue—that "violation of the forum-defendant rule is a non[-]jurisdictional defect in removal." *Id.* at 1053. As a non-jurisdictional defect in removal, the Eighth Circuit has since explained, "[v]iolating [the forum-defendant rule] does not destroy jurisdiction" and "[c]omplying with it cannot create jurisdiction either." *M&B Oil, Inc. v. Federated Mut. Ins. Co.*, 66 F.4th 1106, 1110 (8th Cir. 2023). Put another way, the forum-defendant rule—as a procedural rule of removability—is separate from and has no impact on the question of whether a federal court has diversity jurisdiction for purposes of removal.

**B. "Snap-Removal"**

Plaintiff Piepergerdes' primary argument for remand is that Defendant University's pre-service removal or "snap removal" violates the forum-defendant rule.[7] Defendant University argues that, although it is a forum defendant, it is permitted to remove under 28 U.S.C. § 1441(b)(2) because it did so before it had been served. Thus, the issue here is whether so-called "snap removal" is allowed under § 1441(b)(2) or whether an action that names a forum defendant is never removable, whether or not any defendant has been served. Put another way, the question is: Can a forum defendant remove a case to federal court if it does so prior to service of process on the forum defendant?[8]

Plaintiff Piepergedes argues (as some district courts in this circuit have found) that allowing a forum defendant to remove a case to federal court before it has been served undermines the

[7] Because the forum-defendant rule is not jurisdictional in nature, a motion to remand on grounds that the removal of a case violates the forum-defendant rule must be made within 30 days of removal. 28 U.S.C. § 1447(c). Plaintiff Piepergedes' motion to remand was timely filed in this regard.

[8] In this case, Defendant University is both the forum defendant and the removing party. Defendant Rocky Mountain Chocolate Factory, which is not a citizen of Missouri, did not join the removal (although it opposes Plaintiff Piepergerdes' motion to remand, (*see* Doc. 11)).

purpose and policy not only of the forum-defendant rule itself but also of federal diversity jurisdiction, which is generally recognized as "exist[ing] to protect out-of-state litigants from state court bias." *Gen. Elec. Cap. Corp. v. Grossman*, 991 F.2d 1376, 1381 (8th Cir. 1993). He argues, as those cases have, that permitting snap removal allows gamesmanship by a forum defendant to remove an action that would otherwise be unremovable under the forum-defendant rule once the forum defendant had been served.

The Eighth Circuit has not yet decided whether snap removal is permitted under the forum-defendant rule. *See M&B Oil*, 66 F.4th at 1109 (recognizing that the Eighth Circuit has not "yet weigh[ed] in on the question" of whether an action may be removed "before the plaintiff properly joins and serves the forum-state defendant" (internal quotation marks omitted; quotation modified))[9]. As the Eighth Circuit noted in *M&B Oil*, various other federal circuit courts have held that snap removal is permissible and consistent with § 1441(b)(2) so long as (1) there exists diversity of citizenship jurisdiction (that is that the parties are completely diverse), and (2) the forum-state defendant had not been joined and served at the time of removal. *See Texas Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 485–87 (5th Cir. 2020);[10] *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704-07 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152-54 (3d Cir. 2018); *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001). No party cites, and the Court is not aware of, any Circuit Court of Appeals decision that has rejected snap removal in light of the forum-defendant rule.[11] As in the remaining circuits, district courts in the Eighth

[9] In *M&B Oil*, the propriety of snap removal was not directly before the Eighth Circuit. In that case, the argument raised concerned whether removal to federal court was proper based on diversity jurisdiction where removal was effectuated by the non-forum defendant, who was diverse from the plaintiff, before service of process was completed as to the forum defendant, who was not diverse from the plaintiff. Under those circumstances, the Eighth Circuit held that the district court lacked complete diversity jurisdiction and that the case was not removable. *M&B Oil*, 66 F.4th at 1110 (emphasizing that the forum-defendant rule has no bearing on the district court's complete diversity jurisdiction).

[10] Although *Texas Brine* involved snap removal by a non-forum defendant, the Fifth Circuit has explicitly applied *Texas Brine* to a case involving just a single forum defendant. *Anaya v. Schlumberger Tech. Corp.*, No. 24-20170, 2024 WL 5003579, at *3 (5th Cir. Dec. 6, 2024) (joining the Second Circuit (*Gibbons*) and Third Circuit (*Encompass*) in holding that a home-state or forum defendant may properly remove a diversity-jurisdiction action prior to it being served).

[11] The closest case is *Goodwin v. Reynolds*, 757 F.3d 1216 (11th Cir. 2014). In *Goodwin*, the Eleventh Circuit affirmed the district court's order granting a plaintiff's motion under Rule 41(a)(2) of the Federal Rules of Civil Procedure to voluntarily dismiss a removal action after considering a non-forum defendant's snap removal. *Id.* at 1220-22. In that context, the Eleventh Circuit found that the purpose of the language "properly joined and served" in the forum-defendant rule is to prevent gamesmanship by a plaintiff naming a forum defendant but never intending to serve or proceed against the forum defendant and

Circuit and even this district remain largely split on the issue of snap removal. The courts that find snap removal impermissible often focus on the intended purpose of the forum-defendant rule more broadly and together with the "properly join[ed] and serve[d]" language more specifically as intended to prevent gamesmanship in removal (whether gamesmanship by a plaintiff to prevent removal or gamesmanship by a defendant to obtain removal). *See, e.g.*, *Prather v. Kindred Hosp.*, No. 14-0828-CV-W-FJG, 2014 WL 7238089, at *3-4 (W.D. Mo. Dec. 17, 2014).

Under § 1441, a defendant generally has a "statutory" "right to remove." *Holdbein*, 983 F.3d at 1054, 1055 (internal quotation marks omitted). At the same time, a plaintiff has a right (or more accurately a "privilege") under the forum-defendant rule to "preserve" his "choice of a (state) forum, under circumstances where it is arguably less urgent to provide a federal forum to prevent prejudice," *id.* at 1055, i.e., when an out-of-state plaintiff brings suit against a defendant in the defendant's own forum. The Court is not persuaded that interpreting and applying the plain language of the forum-defendant rule to allow removal by a forum defendant prior to when the forum defendant has been "properly joined and served" is incongruous or produces an absurd result. *See Anaya*, 2024 WL 5003579, at *3 (agreeing with *Gibbons* and *Encompass* that enforcing the plain text of § 1441(b)(2) to allow removal in a diversity case involving a forum defendant if the case is removed prior to the forum defendant being served is "reasonable" and "rational" (internal quotation marks omitted)). In short, the Court finds that Defendant University's removal prior to it being served does not violate the forum-defendant rule and is not procedurally improper.

**C. Diversity Jurisdiction**

Because the Court finds that Defendant University's removal did not violate the forum-defendant rule, the Court turns to Plaintiff Piepergerdes' alternative argument that the Court lacks federal diversity jurisdiction.

Diversity jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity of citizenship among the litigants. "Complete diversity of citizenship exists where no defendant holds

---

in doing so blocking removal to federal court. *Id.* at 1221. Thus, the Eleventh Circuit reasoned that snap removal by a non-forum defendant is "not at the core of what the removal statute protects," and held that the district court did not abuse its discretion by granting the plaintiff's motion to dismiss without prejudice "to undo *Defendants'* gamesmanship" by a pre-service removal (which was accomplished before the forum defendant had been served). *Id.* Although the Eleventh Circuit in *Goodwin* did consider snap removal, it did so indirectly and in dicta. *See Frenz v. Costco Wholesale Corp.*, No. 2:23-cv-00517-ACA, 2023 WL 12143307, at *2 (N.D. Ala. May 10, 2023) (recognizing that *Goodwin* "question[ed] in dicta whether snap removals are proper).

citizenship in the same state where any plaintiff holds citizenship." *Prempro*, 591 F.3d at 620. In a removal case, "diversity of citizenship is determined at the time the suit is filed and upon its removal." *Cleek v. Ameristar Casino Kansas City, LLC*, 47 F.4th 629, 635 (8th Cir. 2022). Citizenship for the purpose of diversity jurisdiction "is a mixed question of law and fact, but mainly fact." *Blakemore v. Mo. Pac. R. Co.*, 789 F.2d 616, 618 (8th Cir. 1986).[12]

For an individual, citizenship and domicile are synonymous for purposes of diversity jurisdiction. *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). A person can only have one domicile at a time. *Aly v. Hanzada for Import & Export Co., LTD*, 864 F.3d 844, 848 (8th Cir. 2017); *see also Hargett v. RevClaims, LLC*, 854 F.3d 962, 965 (8th Cir. 2017) (noting that for purposes of diversity jurisdiction "[r]esidency is a more fluid concept" and that "[o]ne could . . . be a resident of multiple states" but may only be a "citizen of just one state"). A person's domicile is established by their physical presence in a state intending to remain there indefinitely. *See Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1085 (8th Cir. 2017); *Holmes v. Sopuch*, 639 F.2d 431, 433-34 (8th Cir. 1981) (explaining that domicile does not require an intent to remain permanently but it does require the absence of a "present or fixed intent to move on upon the happening of a reasonably certain event"). Once established, an individual's domicile continues until a new domicile is acquired. *See Yeldell*, 913 F.2d at 537.

Because intent is often difficult to ascertain directly, courts rely heavily on objective evidence, including "declarations, exercise of civil and political rights, payment of taxes, obtaining of licenses, location of business or occupation, and ownership of property" to discern an individual's domicile for purposes of diversity jurisdiction. *Eckerberg*, 860 F.3d at 1085. Where objective facts conflict with a party's professed intent, courts afford greater weight to the objective evidence. *Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 839 (8th Cir. 2022) (recognizing that "[a] litigant's self-serving statements of intention are entitled to little weight when in conflict with facts," and finding in that case that "the *objective* factors [including the lawyer-defendant's filing an address with the Indiana Supreme Court, his voting registration and voting record, and published personal information, among other facts] weigh in favor of Lewis being domiciled in Indiana" (internal quotation marks omitted; quotation modified)).

[12] Diversity jurisdiction also requires that a certain amount-in-controversy threshold be satisfied ($75,000). § 1332(a). No party argues or suggests that the amount-in-controversy requirement for diversity jurisdiction is not satisfied in this case.

Defendant University argues that Plaintiff's citizenship and domicile is Texas for purposes of federal diversity jurisdiction. Plaintiff argues that his citizenship and domicile is (or more accurately, has remained) Missouri. The record in this case convinces the Court that, for purposes of federal diversity jurisdiction, Plaintiff's domicile and citizenship is Texas, not Missouri.

Plaintiff relocated—or, in his own words, "moved"—to Corpus Christi, Texas, on or around July 3, 2025, with the intent of opening and operating the Corpus Christi Franchise which he had been awarded through the MGT 417 structured franchise competition. (Doc. 1-2 ¶ 47.) Plaintiff signed a residential lease in Corpus Christi effective July 3, 2025, through October 2, 2026, and registered the Corpus Christi franchise with the State of Texas as Coastal Bend Chocolate, LLC. (*See* Docs. 15-2, 15-3.) Unlike the plaintiffs in *Holmes* (as cited by Plaintiff) who moved to Ohio for a one-year educational program with a fixed and certain terminating event, *Holmes*, 639 F.2d at 434, Plaintiff's "move[]" to Texas was tied to an open-ended business venture with no defined endpoint. On or around July 3, 2025, a Thursday, Plaintiff found himself physically present in Texas intending to remain there indefinitely, embarking on his Rocky Mountain Chocolate franchise ownership venture. At that time, his citizenship and domicile (for diversity jurisdiction purposes) became that of the State of Texas.

To be sure, as Plaintiff emphasizes, Plaintiff learned just a few days later that he would not be receiving ownership of the Corpus Christi Franchise after all. (Doc. 15-1 at ¶ 18.) Once that occurred, Plaintiff attests that he no longer "intend[ed] to remain in Corpus Christi indefinitely" but that he "was stuck in a lease in Corpus Christi and forced to make do." (*Id.* at ¶¶ 19, 20.) While Plaintiff's reasons for staying in Texas are understandable and reasonable as a practical matter, for purposes of considering diversity jurisdiction in this case, more than a mere indefinite intention to return to Missouri is required to change his domicile from Texas back to Missouri. Plaintiff emphasizes that his driver's license, car registration, car insurance, and health insurance remain tied to Missouri. But these facts do not prevent his domicile from being changed from Missouri to Texas on or around July 3, 2026, when he moved to Texas to own and operate the Corpus Christi Franchise, and these facts alone do not support a change in domicile back to Missouri after July 7, 2026. Plaintiff, both at the time this case was filed and at the time of removal, remained physically present in Texas. *See Altimore v. Mt. Mercy College*, 420 F.3d 763, 768-69 (8th Cir. 2005) ("Citizenship [or domicile] is determined by a person's physical presence in a state along with his intent to remain there indefinitely." (emphasis added)). For purposes of considering

diversity jurisdiction, more is required to change Plaintiff's domicile from Texas (back) to Missouri than a "someday" intention to return.[13]

In short, for purposes of considering the Court's original jurisdiction under 28 U.S.C. § 1332, the Court finds that requirement of complete diversity is satisfied.

### D. Conclusion

Because Defendant University's removal did not violate the forum-defendant rule and because the Court has diversity jurisdiction, Plaintiff Piepergerdes' motion to remand is **DENIED**.

## II. Defendant University's Motion to Dismiss (Doc. 7)

Defendant University argues that Plaintiff Piepergerdes' claims for breach of contract (Count 1), breach of implied contract (Count 2), and negligent misrepresentation (Count 3) asserted against it fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A. Count 1 – Breach of Express Contract

In Count 1, Plaintiff Piepergerdes asserts a claim for breach of express contract grounded in the syllabus for the underlying business course, MGT 417. "[T]o state a claim for breach of contract under Missouri law, [Plaintiff] must establish the existence of a valid contract, the rights of plaintiff and obligations of [each] defendant under the contract, a breach by [each] defendant, and damages resulting from the breach." *Gillis v. Principia Corp.*, 832 F.3d 865, 871 (8th Cir. 2016) (internal quotation marks omitted; quotation modified). In general, a complaint alleging breach of contract must "at minimum, cite the contractual provision allegedly violated"; "[g]eneralized allegations of a contractual breach are not sufficient." *Id.* at 872 n.11 (internal quotation marks omitted).

"Contracts are created by promissory expression" which may be expressed verbally or by conduct. *Westerhold v. Mullenix Corp.*, 777 S.W.2d 257, 263 (Mo. Ct. App. 1989). The Missouri

[13] The Court notes that Plaintiff does not definitively or expressly say in his affidavit or declaration that he *will* return to Missouri or *when* he would do so. He states only that he is "stuck in a lease in Corpus Christi," that he no longer intended to remain in Texas after the franchise deal fell through, and that his "home base" and "center of gravity remains in Missouri." (Doc. 15-1 at ¶¶ 19, 20, 22, 23, 27.) The Court presumes this is because Plaintiff's core argument is that his domicile never changed from Missouri. As explained above, however, the objective evidence and Plaintiff's subjective intent is clear that on or about July 3, 2025, Plaintiff found himself physically present in Corpus Christi, Texas, having "move[d]" there to pursue his ownership and operation of the Corpus Christi Franchise he had won through the MGT 417 structured franchise competition. That his circumstances and desires changed even if just four days later, does not alone support a change in domicile back to Missouri for purposes of considering diversity jurisdiction in this case. Something more than these changed circumstances and changed desires is required to change his domicile, particularly where Plaintiff has remained in Texas.

Court of Appeals has held that "to assert a breach of contract claim against a university, a student plaintiff must point to an identifiable contractual promise that the university defendant failed to honor." *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013) (internal quotation marks omitted).

The "promise" underlying Plaintiff Piepergerdes' claim for breach of express contract against Defendant University is the alleged promise in the syllabus for MGT 417 for the transfer of a Rocky Mountain Chocolate Factory franchise (the Corpus Christi Franchise) to the student winner of the structured franchise competition completed in conjunction with the course. (*See* Doc. 1-2 at ¶¶ 66-67; Doc. 22 at 5 (asserting that "Defendants . . . failed to deliver the [Rocky Mountain Chocolate Factory] franchise to Plaintiff as repeatedly promised.").) Plaintiff points to a statement in the MGT 417 syllabus as making this promise:

> The course also offers students the opportunity to acquire ownership in a business franchise through a separate competition. Competing students must be willing to relocate and sign an ownership option agreement that includes initial financing provided by a donor. Students compete for a limited number of franchises each spring and are selected by a committee consisting of business and franchise representatives.

Beyond merely quoting this language, Plaintiff does not sufficiently identify what provision of the MGT 417 course syllabus he alleges Defendant University breached, or in other words how (or where) the syllabus includes "an identifiable contractual promise" that the University will transfer a Rocky Mountain Chocolate Factory franchise to a MGT 417 student. The cases Plaintiff cites in his brief are largely unhelpful or inapposite.

In *Robbe v. Webster University*, 98 F. Supp. 3d 1030 (E.D. Mo. Mar. 25, 2015), for example, the district court found that Robbe, a graduate student at Webster University, stated a plausible claim for breach of contract against Webster University. The parties' agreement arose after the thesis committee "failed and/or refused to appear" at a previously scheduled meeting for Robbe to defend her thesis. *Id.* at 1032. The district court found a plausible actionable contract or agreement which Robbe and the university had agreed that Robbe would present her thesis to a thesis committee: "the terms of the alleged contract were quite clear: Dr. Spencer promised to set a date in mid-August for Plaintiff's thesis defense, and Plaintiff promised not to pursue the matter further." *Id.* at 1035.

Here, in contrast, the express representation in the MGT 417 course syllabus on which Plaintiff Piepergerdes relies for an express contract claim against Defendant University merely

refers to "the opportunity to acquire ownership in a business franchise through a separate competition" (not that the University will transfer a Rocky Mountain Chocolate Factory franchise to a MGT 417 course student). Assuming that the course syllabus is a valid and enforceable contract in this regard, Plaintiff does not plausibly allege that Defendant University failed to honor the promise to provide an opportunity to acquire ownership in a franchise ultimately owned by a third party through the structured franchise competition.

In addition, the Court is not persuaded that the course syllabus can itself constitute a legally sufficient offer by Defendant University to transfer a Rocky Mountain Chocolate Factory franchise to Plaintiff Piepergerdes (or any other MGT 417 course student) because the transfer of any such franchise is necessarily premised or conditioned on future acts and future agreements—i.e., being selected as the winner of the competition by a separate panel of judges and signing an ownership option agreement with Defendant Rocky Mountain Chocolate Factory. *See also Fedynich v. Massood*, 342 S.W.3d 887, 891-92 (Mo. Ct. App. 2011) (discussing the principle that "[n]o contract is formed where the terms of the agreement are unduly uncertain or indefinite"). And in addition, Plaintiff does not explain how his enrollment in the MGT 417 course and completing course requirements or participating in the structured franchise competition, including developing a business plan and presenting that plan to a panel of judges, constitutes legally sufficient consideration for a contract between himself and Defendant University regarding transfer of a Rocky Mountain Chocolate Factory franchise.

In his response, Plaintiff Piepergerdes suggests that the syllabus "is just another example of [the University]'s franchise representation[s]" on which his breach of contract claim is based. (Doc. 22 at 15.) Plaintiff's generalized and vague allegations that "[t]he defendants, and agents, repeatedly offered and represented it would give the Corpus Christi [F]ranchise to the student selected by . . . the panel of judges," (Doc. 1-2 at ¶ 13), and that "Defendants materially breached the express contract by refusing to transfer the [Rocky Mountain Chocolate Factory] franchise to Plaintiff," (*id.* at 11, ¶ 66), does not plausibly state a claim for breach of contract against Defendant University, however. Plaintiff does not set forth any facts plausibly showing how *Defendant University* "refus[ed] to transfer" the Corpus Christi Franchise, a franchise of Defendant Rocky Mountain Chocolate Factory.

Moreover, the Court notes that Plaintiff Piepergerdes otherwise alleges that he "was, in fact, given ownership to the franchise," (*id.* at 10, ¶ 63), but that the third-party shopping mall

where the franchise was physically located imposed certain "restrictions and obstacles"[14] that effectively prevented Plaintiff from being able to own and operate the franchise after all, (*id.* at 8, ¶¶ 50-52). In short, Plaintiff's generalized allegation of a breach of contract is insufficient to state a plausible claim for breach of contract against Defendant University through the MGT 417 course.

**B. Count 2 – Breach of Implied Contract**

In addition to a claim for breach of an express contract, Plaintiff Piepergerdes also asserts a claim for breach of an implied contract arising out of Defendant University's "course of conduct over ten years," which included past MGT-417-student winners of the structured franchise competition being awarded ownership of a business franchise. Plaintiff fails to state a plausible claim for breach of implied contract against Defendant University for the same reasons explained above, however. As Plaintiff acknowledges, Defendant University "promised a franchise-ownership competition." (Doc. 22 at 19.) His vague and generalized allegation that Defendant University breached any contract (whether express or implied) "when defendants failed to effectuate the [Rocky Mountain Chocolate] franchise transfer to Plaintiff" is simply insufficient to state a plausible claim for relief against Defendant University.

**C. Count 3 – Negligent Misrepresentation**

In Count 3, Plaintiff Piepergerdes asserts a claim for negligent misrepresentation. Defendant University asserts that Count 3 is barred by the doctrine of sovereign immunity under § 537.600, RSMo, and that no exception (or waiver) applies.

"Sovereign immunity . . . protect[s] public entities from liability for state tort claims unless a specific exception applies." *Davis v. Buchanan County*, 446 F. Supp. 3d 493, 496 (W.D. Mo. 2020). Plaintiff does not contest that Defendant University is a public university that is entitled to assert the doctrine of state sovereign immunity. Instead, he primarily asserts in response that his claim for negligent misrepresentation "sound[s] in contract," not tort, and therefore is not barred by sovereign immunity. *See Edoho v. Bd. of Curators of Lincoln Univ.*, 344 S.W.3d 794, 798-99 (Mo. Ct. App. 2011) (holding that claim for breach of covenant of good faith and fair dealing is not barred by sovereign immunity because such a claim—arising out of a duty that is implied in every contract—"did not plead a tort action, rather it sounded in contract").

---

[14] Referred to elsewhere in the complaint as unidentified "lease restrictions." (Doc. 1-2 at 13, ¶ 78(C).)

Plaintiff's argument appears to be that because his theory is that Defendant University breached a contract (whether express or implied), his claim for negligent misrepresentation is necessarily grounded in contract, too, and is therefore not barred by the doctrine of sovereign immunity. The Court is not persuaded. Simply because a claim involves or includes contract elements or an alleged contractual relationship does not mean that sovereign immunity necessarily does not apply. *See, e.g.*, *Kunzie v. City of Olivette*, 184 S.W.3d 570, 573 (Mo. banc 2006) (holding that claims for wrongful termination and whistleblower retaliation were barred by sovereign immunity even if the "wrongful discharge in this context might be based on a contractual relationship"). As pleaded, the Court is persuaded that Plaintiff's claim for negligent misrepresentation is a tort claim asserted as an alternative theory for the same alleged wrongful conduct, even if relief is also sought for an alleged breach of contract. *See Schwartze Bramblett v. City of Columbia*, No. 2:14-CV-04078-NKL, 2014 WL 2572829, at *1-3 (W.D. Mo. June 9, 2014). And for the reasons explained in Defendant University's reply, each of the cases cited by Plaintiff are inapposite and unhelpful.[15] (Doc. 17 at 10-11.)

In his response brief, Plaintiff Piepergerdes also suggests that "Missouri law allows for a waiver of sovereign immunity based on insurance coverage" and that dismissal at the pleadings stage before discovery would be premature. (Doc. 22 at 23.) To the contrary, Missouri law is clear that a plaintiff must "plead and prove the existence of insurance" that acts as a waiver of sovereign immunity. *Brennan ex rel. Brennan v. Curators of the Univ. of Mo.*, 942 S.W.2d 432, 436-37 (Mo. Ct. App. 1997); *see St. John's Clinic, Inc. v. Pulaski Cnty. Amb. Dist.*, 422 S.W.3d 469, 471 (Mo. Ct. App. 2014) (finding "well settled" in Missouri law the proposition that "[s]overeign immunity is not an affirmative defense but is part of the plaintiff's *prima facie* case" (internal quotation marks omitted)). Plaintiff did not plead waiver of sovereign immunity through

---

[15] For example, *Kemp v. Board of Regents of Northwest Missouri State University*, 644 S.W.2d 675 (Mo. Ct. App. 1982), considered a breach-of-contract claim brought against the university by a PhD assistant professor, not a negligent misrepresentation claim. In *Holmes v. Kansas City, Missouri Board of Police Commissioners ex rel. Its Members*, 364 S.W.3d 615 (Mo. Ct. App. 2012), the Missouri Court of Appeals held that a whistleblowing claim "submitted to the jury as a tort [claim]," and not as a contract claim, was barred by sovereign immunity. *Id.* at 625. Notably, in *Holmes*, the Missouri Court of Appeals recognized that the petition *could* have been read as "plead[ing] a contractual whistleblowing claim," inasmuch as the petition included a breach of contract claim alleging that termination for reporting other officers' misconduct constituted a breach of Holmes' employment agreement that included a "for-cause" termination provision. *Id.* at 624-25. Unlike in *Holmes*, whose claims sound in contract, Plaintiff Piepergerdes' negligent misrepresentation claim sounds in tort, not contract.

insurance in his complaint. Nor does Plaintiff seek leave to amend his complaint under Rule 15(a) of the Federal Rules of Civil Procedure and Local Rule 15.1(a), in this regard, to plead any facts that Defendant University has obtained an insurance policy that constitutes waiver of its sovereign immunity as to his tort claim for negligent misrepresentation in Count 3.

**D. Conclusion**

Therefore, Defendant University's motion to dismiss for failure to state a claim, (Doc. 6), is **GRANTED**.

## III. Defendant Rocky Mountain Chocolate Factory's Motion to Dismiss (Doc. 9)

Finally, the Court considers Defendant Rocky Mountain Chocolate Factory's motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction (as to all three counts). Defendant Rocky Mountain Chocolate Factory also asserts that if the Court does have personal jurisdiction, Count 3 should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, asserting that the economic loss doctrine bars Plaintiff Piepergerdes' claim for negligent misrepresentation. The Court begins (and ends) with the issue of personal jurisdiction.

**A. Whether the Court Has Specific Jurisdiction as to Defendant Rocky Mountain Chocolate Factory**

Personal jurisdiction refers to the Court's authority to exercise judicial power "over the defendant's person." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945); *see Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 11 (2025) ("We have long held that a court must have power over the parties before it (personal jurisdiction) before it can resolve a case." (internal quotation marks omitted; quotation modified)); *State ex rel. Cedar Crest Apartments, LLC v. Grate*, 577 S.W.3d 490, 493 (Mo. banc 2019) ("Personal jurisdiction refers quite simply to the power of a court to require a person to respond to a legal proceeding that may affect the party's rights or interests."). "[D]ue process requires . . . [a defendant] have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notices of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (internal quotation marks omitted). Personal jurisdiction, consistent with the requirement of due process, derives from "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir.

2014). The Court views the evidence in the light most favorable to the plaintiff and resolves factual conflicts in the plaintiff's favor in determining whether the plaintiff has made a prima facie showing of personal jurisdiction over the challenging defendant. *Id.* The plaintiff's "prima facie showing" is tested by the pleadings as well as by the affidavits and exhibits submitted in connection with the motion. *Id.* Where a defendant challenges personal jurisdiction supported by "testimony, affidavits, or other documents," a plaintiff cannot rely merely on "conclusory allegations in his complaint" to satisfy the requirement to make a prima facie showing. *Dever*, 380 F.3d at 1074.

At this early pleadings stage, the question is whether there are "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction" in this forum. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (internal quotation marks omitted); *see also Creative Calling Sols., Inc. v. LF Beauty, Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (while a plaintiff "must establish jurisdiction by a preponderance of the evidence at trial or when the court holds an evidentiary hearing," "[a]t the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [the plaintiff] is sufficient to support a conclusion that the exercise of personal jurisdiction . . . is proper").

There are two theories of personal jurisdiction, referred to as general jurisdiction and specific jurisdiction. The parties agree that the Court does not have general jurisdiction—for which "the paradigm forum . . . is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (internal quotation marks omitted)—as to Defendant Rocky Mountain Chocolate Factory, which is incorporated in the state of Delaware and has its principle place of business in Colorado. (*See* Doc. 10-1 at 1, ¶¶ 3 &4.) The other theory of personal jurisdiction, specific jurisdiction arises from "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). Specific jurisdiction is thus limited or confined to "a narrower class of claims" than general jurisdiction,[16] in that "[t]he plaintiff's claims . . . must arise out of or

[16] In exercising general jurisdiction, a court "may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co.*, 582 U.S. at 262; *see also Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (noting that "[u]nder the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has continuous and

relate to the defendant's contacts with the forum [State]." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (internal quotation marks omitted).

A court can exercise specific jurisdiction "only if authorized by the forum state's long-arm statute and [as] permitted by the Due Process Clause of the Fourteenth Amendment." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). Missouri's long-arm statute, § 506.500, RSMo, "authorizes personal jurisdiction over defendants who, *inter alia*, transact business, make a contract, or commit a tort within the state." *Id.* The parties dispute whether Missouri's long-arm statute is satisfied here. For purposes of analysis, the Court presumes that Missouri's long-arm statute is satisfied and considers whether Defendant Rocky Mountain Chocolate Factory's contacts with Missouri are sufficient to satisfy due process.

As noted above, due process in this context fundamentally requires that "[t]here must be sufficient minimum contacts between a defendant and the forum state so that jurisdiction over a defendant with such contacts may not offend traditional notions of fair play and substantial justice." *Aly*, 864 F.3d at 849 (internal quotation marks omitted). Put another way, "[a] defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820-21 (8th Cir. 2014). "Sufficient minimum contacts requires some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (internal quotation marks omitted). Mere "random, fortuitous, and attenuated contacts" with a forum state are not sufficient to give rise to specific jurisdiction. *Viasystems*, 646 F.3d at 594.

To determine the sufficiency of an out-of-state defendant's contacts with a forum state for purposes of specific jurisdiction, the Eighth Circuit generally utilizes a five-factor test, which considers: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Fastpath*, 760 F.3d at 821. The first three factors carry the most weight. *Id.*

Plaintiff argues that Defendant Rocky Mountain Chocolate Factory is subject to jurisdiction in this forum consistent with due process pointing to its "participation in and direction

systematic contacts with the forum state, even if the injuries at issue did not arise out of the defendant's activities directed at the forum").

of the Missouri-centered franchise competition at [Missouri Western State University] and its Missouri communications/directions concerning Plaintiff's franchise award." (Doc. 23 at 17.) Plaintiff emphasizes the company's long-standing affiliation or participation with Defendant University by previously awarding franchises to MGT 417 students through the structured franchise competition.

"[S]pecific jurisdiction [unlike general jurisdiction] is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb*, 582 U.S. at 262 (internal quotation marks omitted). Plaintiff's emphasis of Defendant Rocky Mountain Chocolate Factory's long-standing or historical affiliation with Defendant University alone somewhat misses the mark in this regard. The question is whether Defendant Rocky Mountain Chocolate Factory's contacts with Missouri in the context of *Plaintiff*'s particular claims is sufficient. *See Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 952 (8th Cir. 2022) (noting that "in assessing specific jurisdiction, we look only to [the out-of-state defendant]'s contacts with Missouri related to [the plaintiff]'s claims"). In *Zazzle*, the Eighth Circuit recognized that the requirement of specific jurisdiction that there "be an affiliation between the forum and the underlying controversy" means that, in the context of a trademark claim, "even regularly occurring sales of a product in a State do[es] not justify the exercise of jurisdiction over a claim unrelated to those sales." *Id.* (internal quotation marks omitted). The Court does not intend to suggest that Defendant Rocky Mountain Chocolate Factory's affiliation or partnership (in a non-legal sense) with Defendant University is wholly irrelevant to the present lawsuit but only that the simple fact of its historical or long-standing affiliation or relationship with Defendant University itself is not informative or dispositive to the Plaintiff-specific specific jurisdiction inquiry.[17]

It is well-established that "[a] contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." *K-V Pharma. Co.*, 648 F.3d at 593. *K-V Pharmaceutical Co.* is an example of an out-of-state defendant ("Uriach") having sufficient contacts with a forum state to satisfy due

---

[17] It might well be different, for example, if this were a lawsuit brought by Defendant University against Rocky Mountain Chocolate Factory related to the structured franchise competition, or some correlated issue. Additionally the long-standing affiliation or partnership might be relevant to the merits of Plaintiff's substantive claims, but for purposes of specific jurisdiction, the historical or long-standing connection is not informative or dispositive.

process as to a breach-of-contract action brought by a forum plaintiff. In that case, the Eighth Circuit found that during the parties' twelve-year contractual relationship,

(1) Uriach had had various communications with K-V Pharmaceuticals (the in-state party) through letters, email, and telephone calls (both during contract negotiation and after the contract was executed and later amended),

(2) Uriach representatives had visited K-V Pharmaceuticals' Missouri-based facility (after the parties later renegotiated their contract),

(3) K-V Pharmaceuticals sent Uriach samples of a competitor's product at Uriach's request,

(4) during the parties' contract, Uriach sent "significant" payments to K-V Pharmaceuticals, and

(5) the parties' contract contemplated "future consequences" and an ongoing relationship including royalty fees and additional shipments.

*Id.* at 593-94. The Eighth Circuit concluded that "Uriach's actual contacts with Missouri," which "include[d] its officials coming to Missouri . . . to renegotiate the contract with KV, its paying money to KV as agreed in the contract, and its exchanging many letters, emails, and telephone calls with KV throughout the 12 years that the contract was in existence," was sufficient minimum contacts to confer specific jurisdiction in that case. *Id.* at 594.

In contrast, *Viasystems, Inc.*, is an example of an out-of-state defendant ("St. Georgen") having insufficient contacts with a forum state to satisfy due process in an action brought by a forum plaintiff asserting both contract and tort claims. Specifically, the Eighth Circuit found that St. Georgen's contacts with Missouri, consisting of "scattered e-mails, phone calls, and a wire transfer of money to Viasystems in Missouri" were merely "incidental contacts with Missouri" and did not "constitute a deliberate and substantial connection with the state such that St. Georgen could reasonably anticipate being haled into court" in Missouri. *Viasystems, Inc.*, 646 F.3d at 594 (internal quotation marks omitted). The Eighth Circuit explained in that case that "[t]he fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state," in regards to its forum-state contacts connected with the asserted claim(s). *Id.* (internal quotation marks omitted).

Here, at best, Plaintiff alleges that Defendant Rocky Mountain Chocolate Factory offered a franchise to the winning student of the structured franchise competition accompanying the MGT 417 course offered by (or through) Defendant University, that a company representative

participated on the judging panel, and that Rocky Mountain Chocolate Factory communicated with students located in Missouri throughout the process, including Plaintiff. Even assuming there is a valid or actionable contractual relationship between Plaintiff and Rocky Mountain Chocolate Factory (which Rocky Mountain contests), Plaintiff offers no allegations or evidence that distinguishes this case from *Viasystems* and does not include the breadth of forum contacts present in *K-V Pharmaceutical Co.* (including, notably, shipments of product into the forum and an in-person visit), that satisfied due process to exercise personal jurisdiction in the forum state.

Nor does Plaintiff allege or point to any evidence, for example, that Rocky Mountain Chocolate Factory advertises its affiliation with Defendant University specifically targeting Missouri residents or students. While Plaintiff cites two Rocky Mountain Chocolate Factory press releases acknowledging its partnership or affiliation with Defendant University and its participation in the structured franchise competitions, these press releases are located on Rocky Mountain Chocolate Factory's own website. Plaintiff includes no allegations nor points to any evidence that these press releases are directed to Missouri residents or even students at Missouri Western State University in particular.[18] And neither does Plaintiff allege or point to any evidence that any Rocky Mountain Chocolate Factory representative physically visited Missouri in regards to the Spring 2025 structured franchise competition through the MGT 417 course.[19] And finally, neither does Plaintiff allege or point to any evidence that Rocky Mountain Chocolate Factory's "communications" with MGT 417 students, or any others in Missouri, are of a nature or quantity to support minimum contacts consistent with what is required by due process.

While Missouri does have an interest in adjudicating claims for breach of contract and negligent misrepresentation of its residents or citizens (at the time of the competition, Plaintiff appears to have been a Missouri citizen and was a student at Defendant University, a public

---

[18] The datelines for the two press releases read: "DURANGO, Colo., March 4, 2013 (GLOBE NEWSWIRE)," and "DURANGO, Colo., Oct. 5, 2023 (GLOBE NEWSWIRE)." *See Students Earn Sweet Start as Entrepreneurs*, Rocky Mountain Chocolate Factory (Mar. 4, 2013 11:23 AM EST), https://ir.rmcf.com/news-events/press-releases/detail/131/students-earn-sweet-start-as-entrepreneurs [https://perma.cc/98Q5-Z2D5]; *Rocky Mountain Chocolate Welcomes New Franchisee*, Rocky Mountain Chocolate Factory (Oct. 5, 2023, 4:20 PM EST), https://ir.rmcf.com/news-events/press-releases/detail/262/rocky-mountain-chocolate-welcomes-new-franchisee [https://perma.cc/HW4F-8XX4].

[19] Plaintiff does not allege or submit any evidence showing where or how the presentations for the structed franchise competition occurred or how the judging panel convened and selected Plaintiff as the winning student (i.e., whether remotely or in person).

college), based on the totality of the circumstances, this factor "does not outweigh" the other factors. *Kaliannan v. Liang*, 2 F.4th 727, 735 (8th Cir. 2021). And neither does the convenience of the parties weigh in favor of exercising personal jurisdiction in this forum. Other than the fact that Plaintiff's family and his current counsel are located in Missouri, Plaintiff himself is currently located in Texas. Litigating this case in Missouri would, if at all, appear to be only marginally more convenient for Plaintiff than another forum (such as Colorado). No party specifically addresses the convenience factor of the due-process minimum contacts analysis.

Overall, under the totality of the circumstances in this case, the Court finds that the exercise of specific jurisdiction over Defendant Rocky Mountain Chocolate Factory by a Missouri court would be inconsistent with due process and the traditional notions of fair play and substantial justice. The connections and conduct on which Plaintiff relies do not provide sufficient minimum contacts with Missouri such that Rocky Mountain Chocolate Factory should reasonably anticipate being haled into court here.

### B. Remedy for Lack of Specific Jurisdiction as to Defendant Rocky Mountain Chocolate Factory

The Court accordingly turns to the appropriate remedy. Defendant Rocky Mountain Chocolate Factory seeks dismissal for lack of personal jurisdiction in this forum. Plaintiff opposes the motion to dismiss on the merits and argues only that the Court can exercise personal jurisdiction.[20] Title 28 U.S.C. § 1631 provides that

> [w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed or noticed . . . .

*See also Johnston v. Wilkins*, 709 F. App'x 404, 405 (8th Cir. 2018) (agreeing that the district court lacked personal jurisdiction but remanding because "the district court should have considered whether the interest of justice required it to transfer the claim . . . rather than dismiss it" pursuant to 28 U.S.C. § 1631).

Generally, "[a] transfer under § 1631, rather than dismissal, is appropriate 'when a plaintiff in good faith filed in the wrong court and the statute of limitations would have run before he could

[20] Plaintiff requests "[i]n the alternative, . . . leave to amend the petition to plead additional factual allegations." (Doc. 23 at 22.) Plaintiff's perfunctory request for leave to amend does not comply with Local Rule 15.1(a), and therefore the Court does not consider it further.

refile properly.'" *Jennings v. Yates*, No. 2:22-CV-130-JTR, 2023 WL 3025487, at * (E.D. Ark. Apr. 20, 2023) (quoting *Gunn v. U.S. Dep't of Agric.*, 118 F.3d 1233, 1240 (8th Cir. 1997)); *see also Regenexx, LLC v. Regenex Health LLC*, 446 F. Supp. 3d 469, 482 (S.D. Iowa 2020) (recognizing that while other factors may be considered for whether transfer in lieu of dismissal for lack of personal jurisdiction "is in the interest of justice," district courts in this circuit commonly "deny transfers under § 1631 where the plaintiff would not be time-barred from re-filing his or her case in an appropriate venue"). Here, it is not apparent that the statute of limitations has (or is likely) to run for either Plaintiff's contract or tort claims, which arise from the Spring 2025 semester, which was approximately one-and-a-half-years ago as of the date of this Order. Accordingly, the Court finds that transfer under § 1631 is not warranted. Plaintiff will have ample opportunity to file a lawsuit to assert his claims against Defendant Rocky Mountain Chocolate Factory in an appropriate forum where personal jurisdiction is proper.

Defendant Rocky Mountain Chocolate Factory's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction is **GRANTED**. Because the Court lacks personal jurisdiction, Defendant Rocky Mountain Chocolate Factory's alternative motion to dismiss Count 3 under Rule 12(b)(6) for failure to state a claim is **DENIED as moot**.

**Conclusion**

Therefore, after careful consideration and review and for the reasons explained above, the Court **ORDERS** that: (1) Plaintiff Piepergerdes' motion to remand, (Doc. 6), is **DENIED**; (2) Defendant University's motion to dismiss for failure to state a claim, (Doc. 7), is **GRANTED**; (3) Defendant Rocky Mountain Chocolate Factory's motion to dismiss, (Doc. 9), is **GRANTED** under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, and is **DENIED as moot** under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim as to Count 3; and (4) Defendants' motions to stay discovery, (Docs. 29, 33), are **DENIED as moot**. This case is **DISMISSED without prejudice**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: August 26, 2026